NO. 21-2817

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

UNITED STATES OF AMERICA,
Appellee

v.

AMIN De CASTRO,
Appellant

APPEAL FROM FINAL ORDER
IN CRIMINAL NO. 15-114 IN THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BRIEF FOR APPELLEE UNITED STATES OF AMERICA

JENNIFER ARBITTIER WILLIAMS
United States Attorney

ROBERT A. ZAUZMER
Assistant United States Attorney
Chief of Appeals

JESSICA RICE
Assistant United States Attorney

615 Chestnut Street, Suite 1250
Philadelphia, PA  19106
(215) 861-8527

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ....................................................1

    I.    Subject Matter Jurisdiction ...............................1

    II.   Appellate Jurisdiction ...................................1

STATEMENT OF ISSUES ............................................................. 2

STATEMENT OF THE CASE ......................................................... 3

    I.    Procedural History ........................................ 3

    II.   Statement of Facts ....................................... 4

STATEMENT OF RELATED CASES .................................... 5

SUMMARY OF ARGUMENT ......................................... 6

ARGUMENT ................................................................ 7

    THE DISTRICT COURT CORRECTLY
    DENIED THE CORAM NOBIS PETITION ........................... 7

    A.   The Standard for Obtaining a Writ of Coram
        Nobis Is More Stringent than the Standards
        Applicable to Other Forms of Post-
        Conviction Relief ........................................ 8

    B.   The Petitioner Has Not Satisfied the Five
        Prerequisites for Coram Nobis Relief ....................... 11

        1.   De Castro did not set forth a sound
            reason for delay ................................12

        2.   The claim was available to De Castro
            at trial ..............................................13

3.    De Castro did not establish fundamental
error .................................................................................17

CONCLUSION.............................................................................. 29

# TABLE OF AUTHORITIES

## Cases

*Bousley v. United States,*
    523 U.S. 614 (1998)........................................................... 14, 16, 27, 28

*Carlisle v. United States,*
    517 U.S. 416 (1996) ............................................................ 10

*Chaidez v. United States,*
    568 U.S. 342 (2013) ............................................................ 7

*Engle v. Isaac,*
    456 U.S. 107 (1982)............................................................14

*Greer v. United States,*
    141 S. Ct. 2090 (2021)................................................passim

*In re Sampson,*
    954 F.3d 159 (3d Cir. 2020)................................................17

*Jennings v. Stephens,*
    574 U.S. 271 (2015) ........................................................... 11

*Massaro v. United States,*
    538 U.S. 500 (2003) .......................................................... 27

*Mendoza v. United States,*
    690 F.3d 157 (3d Cir. 2012) ...................................10, 12, 15

*Ragbir v. United States,*
    950 F.3d 54 (3d Cir. 2020) .........................................passim

*Rehaif v. United States,*
    139 S. Ct. 2191 (2019)................................................passim

*Sawyer v. Whitley,*
    505 U.S. 333 (1992) .......................................................... 28

*Schlup v. Delo,*
    513 U.S. 298 (1995) ............................................................................ 27

*Smith v. Murray,*
    477 U.S. 527 (1986) ............................................................................ 27

*United States v. Am. Ry. Express Co.,*
    265 U.S. 425 (1924) ............................................................................ 11

*United States v. Balde,*
    943 F.3d 73 (2d Cir. 2019) ......................................................... 22, 26

*United States v. Ballentine,*
    4 F.3d 504 (7th Cir. 1993) ................................................................ 15

*United States v. Bond,*
    2021 WL 427117 (E.D. Pa. 2021) .................................................... 16

*United States v. Catlett,*
    2020 WL 5982266 (E.D. Pa. 2020) .................................................. 16

*United States v. Cirilo,*
    2021 WL 617299 (E.D. Pa. 2021) .................................................... 16

*United States v. Correa,*
    2020 WL 5517466 (E.D. Pa. 2020) .................................................. 16

*United States v. Dancy,*
    861 F.2d 77 (5th Cir. 1988) .............................................................. 15

*United States v. Darden,*
    2021 WL 4476889 (E.D. Pa. 2021) .................................................. 16

*United States v. Denedo,*
    556 U.S. 904 (2009) ............................................................................. 9

*United States v. Doe,*
    810 F.3d 132 (3d Cir. 2015) .............................................................. 27

*United States v. Dominguez-Benitez,*
   542 U.S. 74 (2004).................................................................19

*United States v. Evans,*
   2020 WL 6489013 (E.D. Pa. 2020) ....................................16

*United States v. Frady,*
   456 U.S. 152 (1982)............................................................ 26

*United States v. Gary,*
   963 F.3d 420 (4th Cir. 2020)............................................20

*United States v. Garza,*
   340 F. App'x 243 (5th Cir. 2009)..................................... 27

*United States v. George,*
   676 F.3d 249 (1st Cir. 2012)............................................. 18

*United States v. Harris,*
   2020 WL 7232898 (E.D. Pa. 2020) ...................................16

*United States v. Innocent,*
   977 F.3d 1077 (11th Cir. 2020), *cert. denied,*
   141 S. Ct. 2827 (2021) .......................................................15

*United States v. Joseph,*
   2021 WL 2936056 (E.D. Pa. 2021) ....................................16

*United States v. Kafka,*
   222 F.3d 1129 (9th Cir. 2000)............................................15

*United States v. Langley,*
   62 F.3d 602 (4th Cir. 1995)................................................15

*United States v. Mayer,*
   235 U.S. 55 (1914) ............................................................. 10

*United States v. McLean,*
   2020 WL 7384898 (E.D. Pa. 2020)....................................16

*United States v. Mooty,*
        2020 WL 7246910 (E.D. Pa. 2020) ....................................................16

*United States v. Morales-Ortiz,*
        2020 WL 7246913 (E.D. Pa. 2020)...............................................16, 24

*United States v. Morgan,*
        346 U.S. 502 (1954) ........................................................................ 9

*United States v. Mussare,*
        405 F.3d 161 (3d Cir. 2005) ............................................................ 11

*United States v. Nasir,*
        982 F.3d 144 (3d Cir. 2020) ............................................................14

*United States v. Orocio,*
        645 F.3d 630 (3d Cir. 2011) ............................................................ 7

*United States v. Perez-Ortiz,*
        2021 WL 5789119 (E.D. Pa. 2021) ..................................................16

*United States v. Pollard,*
        20 F.4th 1252 (9th Cir. 2021)..........................................................16

*United States v. Ramos,*
        2021 WL 229399 (E.D. Pa. 2021) ...................................................16

*United States v. Reap,*
        391 F. App'x 99 (2d Cir. 2010) .......................................................15

*United States v. Rehaif,*
        888 F.3d 1138 (11th Cir. 2018), *rev'd,*
        139 S. Ct. 2191 (2019).....................................................................15

*United States v. Rhines,*
        640 F.3d 69 (3d Cir. 2011) ......................................................... 9, 10

*United States v. Robinson,*
        2021 WL 2633629 (E.D. Pa. 2021) .................................................16

*United States v. Saunders,*
    2020 WL 5569785 (E.D. Pa. 2020) ....................................................15

*United States v. Stoneman,*
    870 F.2d 102 (3d Cir. 1989) ................................................ 9, 10, 12

*United States v. Trippett,*
    2020 WL 8093367 (E.D. Pa. 2020) ....................................................16

*United States v. Trippett,*
    2021 WL 120956 (E.D. Pa. 2021) ......................................................16

*United States v. Vilella,*
    2020 WL 6136139 (E.D. Pa. 2020) ....................................................16

## Statutes

18 U.S.C. § 922(g) ................................................................... 8, 13, 17

18 U.S.C. § 922(g)(5)(A) ..................................................................... 3

18 U.S.C. § 924 ...............................................................................28

18 U.S.C. § 3231 ................................................................................1

28 U.S.C. § 1291 ................................................................................1

28 U.S.C. § 1651(a) ...........................................................................1

28 U.S.C. § 2255 ................................................................... 9, 12, 17

28 U.S.C. § 2255(f)(3) .....................................................................12

# JURISDICTIONAL STATEMENT

## I. Subject Matter Jurisdiction

The petitioner was convicted of a federal criminal offense, in a matter over which the district court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231. The district court had jurisdiction to consider the petition for a writ of error coram nobis pursuant to the All Writs Act, 28 U.S.C. § 1651(a).

## II. Appellate Jurisdiction

Based upon the timely filing of a notice of appeal from the district court's September 13, 2021 order denying the petition for a writ of error coram nobis, this Court has jurisdiction over this matter under 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

Did the district court correctly rule that the petitioner is not entitled to coram nobis relief in the wake of the United States Supreme Court decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019)?

## STATEMENT OF THE CASE

### I. Procedural History

On March 24, 2015, a grand jury in the Eastern District of Pennsylvania returned a one-count indictment charging petitioner Amin De Castro with possession of a firearm by an illegal alien, in violation of 18 U.S.C. § 922(g)(5)(A). De Castro was convicted following a jury trial in September 2016; however, the district court subsequently granted him a new trial based on his counsel's failure to advise De Castro that counsel was subject to pending disciplinary action at the time of De Castro's trial. De Castro then filed an unsuccessful motion to suppress, and ultimately pled guilty pursuant to a plea agreement to the sole count charged in the indictment. The district court sentenced De Castro to time served, plus two years' supervised release. On May 4, 2017, an Immigration Judge granted De Castro's request for voluntary departure to the Dominican Republic.

De Castro appealed the district court's denial of his motion to suppress and this Court affirmed, in No. 17-1901. On July 22, 2020, he filed a petition for a writ of error coram nobis, challenging his conviction in light of the United States Supreme Court decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019). On September 13, 2021, the district court issued an order denying De Castro's petition. De Castro filed a timely appeal.

## II. Statement of Facts

Petitioner Amin De Castro is a native and citizen of the Dominican Republic. PSR p. 2. He entered the United States illegally in 2002 or 2003, crossing into the country through Puerto Rico. Supp. App. 8.

On the evening of September 22, 2014, a Philadelphia Police Department officer responded to a report of a man pointing a gun at children on the 1800 block of North 31st Street. PSR ¶ 6. The officer observed De Castro, who matched the description of the suspect, standing outside an abandoned storefront with his right hand placed in the right front pocket of his pants. *Id.* When the officer directed De Castro to remove his hand from his pocket, De Castro complied, revealing a pistol grip protruding from his pants pocket. *Id.* ¶ 7. The officer subsequently removed the firearm—a Bersa Thunder .380 pistol, loaded with eight rounds of ammunition in the magazine and one round in the chamber—from De Castro's pocket. *Id.* ¶¶ 7, 9. When asked if he had identification or a license to carry the firearm, De Castro replied that he was in the United States illegally and that he did not have such a license. *Id.* ¶ 8.[1] De Castro was subsequently placed under arrest. *Id.* ¶ 7.

---

[1] Pertinent to this appeal, in which De Castro claims that he did not know he was present in the United States illegally at the time of the offense, we note that De Castro did not object to this paragraph in the presentence

## STATEMENT OF RELATED CASES

Following his conviction, De Castro filed a direct appeal (No. 17-1901), challenging the district court's denial of his motion to suppress. This Court denied De Castro's appeal on October 3, 2018, and affirmed the judgment of the district court. There are no other related cases.

---

report. At trial, to be precise, the officer testified that De Castro admitted he was not a U.S. resident and stated he had no identification.

## SUMMARY OF ARGUMENT

The district court correctly denied De Castro's petition for coram nobis relief. The writ of coram nobis is an extraordinary remedy and the standard for obtaining relief is more demanding than that applicable on either direct or habeas review.

De Castro did not satisfy three of the five required prerequisites for coram nobis relief. He engaged in undue delay in presenting the claim; he did not show that the claim was unavailable at the time of the earlier prosecution; and most significantly, he fails to show a fundamental error, that is, that he was convicted based on innocent conduct. No matter what standard is applied—the plain error standard that would apply on direct appeal, or the more stringent procedural default test that applies on collateral review—it is clear from review of the entire record that De Castro entered the United States illegally in the early 2000s, and remained aware of his illegal status through the date of the offense. He therefore does not show that if *Rehaif* had been applied in this case, there is any reasonable probability that he would not have entered a guilty plea (the plain error test) or that he is actually innocent (the more properly applicable habeas test). For these reasons, the district court correctly concluded that De Castro is not entitled to coram nobis relief.

# ARGUMENT

## THE DISTRICT COURT CORRECTLY
## DENIED THE CORAM NOBIS PETITION

### Standard of Review

On appeal from a decision denying coram nobis relief, legal issues are reviewed de novo, while factual findings are reviewed for clear error. *United States v. Orocio*, 645 F.3d 630, 635 (3d Cir. 2011), *abrogated on other grounds*, *Chaidez v. United States*, 568 U.S. 342 (2013).

### Discussion

Petitioner/appellant Amin De Castro contends that the district court erred in denying his petition for coram nobis relief, asserting that he was not aware that he was an illegal alien at the time he possessed a firearm. The argument is meritless. The record contains clear evidence that De Castro knew that he was unlawfully present in the United States at the time of his arrest, and De Castro does not come close to meeting the standards that would apply on either direct appeal or habeas review to obtain relief from his conviction.

### A.    The Standard for Obtaining a Writ of Coram Nobis Is More Stringent than the Standards Applicable to Other Forms of Post-Conviction Relief.

In *Rehaif v. United States*, 139 S. Ct. 2191 (2019), the United States Supreme Court clarified the *mens rea* requirement for firearms possession offenses under 18 U.S.C. § 922(g). Specifically, the Court held that the knowledge element of the § 922(g) offense requires not only proof that a defendant knowingly possessed a firearm, but also that he knew of the status that made the possession illegal. *Id.* at 2194.

At the time De Castro entered his guilty plea to a charge of possession of a firearm by an illegal alien in 2017, knowledge of the pertinent status was not considered an element of the offense, and that requirement accordingly was not stated to or admitted by De Castro when he entered the plea. The Supreme Court held in its recent opinion in *Greer v. United States* that "a *Rehaif* error in a plea colloquy is . . . not structural" and does not "necessarily render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." 141 S. Ct. 2090, 2100 (2021) (emphasis omitted) (citation omitted). Thus, a *Rehaif* error does not automatically require a reversal of De Castro's conviction, and the question presented is whether coram nobis relief is available.

The writ of coram nobis is an "extraordinary remedy," the application of which is reserved only for those "circumstances compelling such action to achieve justice." *United States v. Morgan*, 346 U.S. 502, 511 (1954). The writ provides a means to challenge a federal conviction where an individual who is no longer in custody—and is thus ineligible for relief pursuant to 28 U.S.C. § 2255—continues to suffer collateral consequences as a result of that conviction. *Ragbir v. United States*, 950 F.3d 54, 62 (3d Cir. 2020). For this reason, coram nobis may not issue where alternative remedies, such as habeas corpus, are available. *United States v. Denedo*, 556 U.S. 904, 911 (2009).

Although the writ "can fill th[e] gap" for an individual who is not in custody for purposes of Section 2255, this Court has emphasized that "'the standard for obtaining [coram nobis] is more stringent than that applicable on direct appeal or in habeas corpus' in recognition of judicial interests in finality and efficiency." *Ragbir*, 950 F.3d at 62 (alteration in original), quoting *United States v. Rhines*, 640 F.3d 69, 71 (3d Cir. 2011); *see also United States v. Stoneman*, 870 F.2d 102, 106 (3d Cir. 1989) (the standard for coram nobis relief "is even more stringent than that on a petitioner seeking *habeas corpus* relief under § 2255"). As a result, "it is difficult to conceive of a situation in a federal criminal case today where a writ of

coram nobis would be necessary or appropriate." *Mendoza v. United States*, 690 F.3d 157, 159 (3d Cir. 2012), quoting *Carlisle v. United States*, 517 U.S. 416, 429 (1996).

Coram nobis relief is thus limited and seeks out errors "of the most fundamental character; that is, such as rendered the proceeding itself irregular and invalid." *United States v. Mayer*, 235 U.S. 55, 69 (1914); *see also Rhines*, 640 F.3d at 71 ("[T]he error must be fundamental and 'go to the jurisdiction of the trial court, thus rendering the trial itself invalid.'" (quoting *Stoneman*, 870 F.2d at 106)). In evaluating a coram nobis petition, courts "presume[] that the prior proceedings were properly conducted" and the petitioner bears the burden of showing otherwise. *Ragbir*, 950 F.3d at 62.

This Court has articulated five prerequisites for coram nobis relief: first, the petitioner must no longer be in custody; second, he must suffer continuing consequences from the purportedly invalid conviction; third, he must offer "sound reasons for failing to seek relief earlier"; fourth, he must have had no available remedy at the time of trial; and fifth, he must assert "error(s) of a fundamental kind." *Id*. Here, although the district court determined that De Castro "made a satisfactory showing of the five pre-conditions required to merit *consideration*" of his petition, App. 8

(emphasis added), the court swiftly concluded that De Castro's petition failed on the merits, that is, that he did not demonstrate fundamental error.

## B. The Petitioner Has Not Satisfied the Five Prerequisites for Coram Nobis Relief.

The government does not dispute that De Castro satisfies two of these five prerequisites. First, he is no longer in custody, having been sentenced to time served in April 2017. App. 75. In addition, De Castro continues to suffer consequences as a result of his conviction, which resulted in his departure from and inability to legally return to the United States.

The government respectfully disagrees with the district court's assessment that the third (undue delay) and fourth (remedy unavailable at trial) prerequisites were met. We explain our view for purposes of completeness, while recognizing that De Castro's failure to demonstrate a fundamental error, explained fully below, is ultimately dispositive in any event.[2]

---

[2] The district court's denial of relief may be affirmed on any ground supported by the record. *See, e.g.*, *United States v. Mussare*, 405 F.3d 161, 168 (3d Cir. 2005); *see also Jennings v. Stephens,* 574 U.S. 271, 276 (2015) (citing *United States v. Am. Ry. Express Co.*, 265 U.S. 425, 435 (1924) (holding that an appellee who does not take a cross-appeal may "urge in support of a decree any matter appearing before the record, although his argument may involve an attack upon the reasoning of the lower court," so long as the appellee does not "attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary")).

### 1. De Castro did not set forth a sound reason for delay.

With respect to the third prerequisite, De Castro must offer "sound reasons" for failing to seek relief earlier. Although there is no "rigid time limit" governing when a coram nobis petition must be filed, this Court has made clear that it "does not apply a timeliness standard for coram nobis that is forgiving of delay and dilatoriness." *Ragbir*, 950 F.3d at 63, 64. In fact, in *Mendoza v. United States*, the Court specified that the "'sound reason' standard is even stricter than that used to evaluate § 2255 petitions." 690 F.3d at 159 (citing *Stoneman*, 870 F.2d at 106).

The instant petition was filed on July 22, 2020—approximately 13 months after the Supreme Court issued the *Rehaif* decision on June 21, 2019. Thus, had the petition been filed pursuant to Section 2255, it would have been untimely and dismissed on that basis alone. *See* 28 U.S.C. § 2255(f)(3) (establishing a one-year limitations period for the filing of a § 2255 motion, running from the date on which the asserted right was initially recognized by the Supreme Court).

The district court reasoned that De Castro's delay of 13 months between the issuance of the *Rehaif* decision and the filing of his coram nobis petition was justified by the fact that De Castro "no longer resid[es] in the United States and thus does not have easy or ready access to legal

resources or his attorney," combined with "the truly unusual and extenuating circumstances posed by the Covid-19 pandemic." App. 9 n.3.

However, the one-year period afforded to a habeas petition is generous, indeed unique in federal criminal law. While litigants during a criminal prosecution or on direct appeal are held to far narrower time restrictions, measured in weeks or at most months, Congress afforded habeas petitioners a far longer period for presentation of a single collateral challenge, surely in recognition of the challenges faced by petitioners who are in custody and almost always acting pro se. There accordingly is no basis for affording an even greater period of time to a person who is at liberty to file a coram nobis petition. In short, while a habeas petitioner could present a *Rehaif* challenge in a first 2255 petition, that petition would be summarily denied if filed more than one year after *Rehaif* was decided. There is no reason to allow further dilatoriness by a coram nobis petitioner.

### 2.    The claim was available to De Castro at trial.

The government also maintains that De Castro could have pursued a remedy at trial, and therefore does not satisfy the fourth prerequisite, either. The district court held that the remedy was not available, simply because the *mens rea* claim would have been denied at that time by a lower court. The court cited this Court's observation that "[u]ntil *Rehaif*, § 922(g)

had not been understood as the Supreme Court interpreted it there. No knowledge-of-status element had previously been perceived in the statute, and no proof of it was required." App. 9, quoting *United States v. Nasir*, 982 F.3d 144, 161 (3d Cir. 2020) (en banc), *rev'd on other grounds*, *Greer v. United States*, 141 S. Ct. 2090 (2021).

However, the question is not whether the claim would have succeeded; rather, "it focuses on whether a party was unable to make certain arguments at trial or on direct appeal." *Ragbir*, 950 F.3d at 63. This is akin to the procedural default rule that applies when an unpreserved claim is raised for the first time on habeas review. That rule controls unless the claim was "so novel that its legal basis [wa]s not reasonably available to [trial] counsel." *Bousley v. United States*, 523 U.S. 614, 622 (1998) (citation and internal quotation marks omitted). In this regard, "futility cannot constitute cause [for defaulting a claim] if it means simply that a claim was unacceptable to that particular court at that particular time." *Engle v. Isaac*, 456 U.S. 107, 130 n.35 (1982) (citation and internal quotation marks omitted). This Court has made clear that an equally demanding standard applies in the context of petitions for coram nobis relief: "we have rejected the notion that ambiguity in the law justifies 'a delay in filing a coram nobis

petition.' What matters is whether a claim can be reasonably raised."
*Ragbir*, 950 F.3d at 65, quoting *Mendoza*, 690 F.3d at 160.

The question presented to the Supreme Court in *Rehaif* had been thoroughly and repeatedly litigated across the courts of appeals for more than three decades. *See, e.g.*, *United States v. Reap*, 391 F. App'x 99, 103-04 (2d Cir. 2010); *United States v. Kafka*, 222 F.3d 1129, 1131-33 (9th Cir. 2000); *United States v. Langley*, 62 F.3d 602, 606 (4th Cir. 1995); *United States v. Ballentine*, 4 F.3d 504, 506 (7th Cir. 1993); *United States v. Dancy*, 861 F.2d 77, 80 (5th Cir. 1988); *see also United States v. Rehaif*, 888 F.3d 1138, 1145 n.3 (11th Cir. 2018) (collecting cases), *rev'd*, 139 S. Ct. 2191. Indeed, following the *Rehaif* decision, the Eleventh Circuit confirmed that the rule announced by *Rehaif* "was not truly novel in the sense necessary to excuse procedural default." *United States v. Innocent*, 977 F.3d 1077, 1084 (11th Cir. 2020) (citations and internal quotation marks omitted), *cert. denied*, 141 S. Ct. 2827 (2021). A plethora of district courts in this Circuit have agreed.[3] Thus, De Castro's *Rehaif* claim—the substance

---

[3] At least 17 rulings have been issued by courts in the Eastern District of Pennsylvania, holding that § 2255 movants could not demonstrate cause for failing to raise their *Rehaif* claims on direct appeal, notwithstanding that those appeals preceded the *Rehaif* decision. *See, e.g.*, *United States v. Saunders*, 2020 WL 5569785, at *4 (E.D. Pa. Sept. 17, 2020) (Bartle, J.) (concluding that the *Rehaif* argument "was not novel so as not to be reasonably available" to defense counsel at the time of defendant's

of which had been percolating in the courts for decades—was "reasonably available" to him at the time he entered his guilty plea in this case, *see Bousley*, 523 U.S. at 622, and the coram nobis petition was unavailing for that reason as well.

---

conviction several years earlier, given that "[t]he issue had been litigated in a number of circuit courts for decades"); *see also United States v. Perez-Ortiz*, 2021 WL 5789119, at *3 (E.D. Pa. Dec. 7, 2021) (Schmehl, J.) (same); *United States v. Darden*, 2021 WL 4476889, at *5 (E.D. Pa. Sept. 30, 2021) (Smith, J.) (same); *United States v. Joseph*, 2021 WL 2936056, at *3 (E.D. Pa. July 12, 2021) (Marston, J.); *United States v. Robinson*, 2021 WL 2633629, at *3 (E.D. Pa. June 25, 2021) (Wolson, J.); *United States v. Cirilo*, 2021 WL 617299, at *2 (E.D. Pa. Feb. 17, 2021) (Schmehl, J.); *United States v. Bond*, 2021 WL 427117, at *2 (E.D. Pa. Feb. 8, 2021) (Robreno, J.); *United States v. Ramos*, 2021 WL 229399, at *2 (E.D. Pa. Jan. 22, 2021) (Robreno, J.); *United States v. Trippett*, 2021 WL 120956 (E.D. Pa. Jan. 13, 2021) (Schiller, J.), *adopting report and recommendation*, 2020 WL 8093367 (E.D. Pa. Nov. 20, 2020); *United States v. McLean*, 2020 WL 7384898, at *1 (E.D. Pa. Dec. 16, 2020) (McHugh, J.); *United States v. Morales-Ortiz*, 2020 WL 7246913, at *3 (E.D. Pa. Dec. 9, 2020) (Pratter, J.); *United States v. Mooty*, 2020 WL 7246910, at *2 (E.D. Pa. Dec. 9, 2020) (Pratter, J.); *United States v. Harris*, 2020 WL 7232898, at *3 (E.D. Pa. Nov. 25, 2020) (Schiller, J.); *United States v. Evans*, 2020 WL 6489013, at *3 (E.D. Pa. Nov. 4, 2020) (Pratter, J.); *United States v. Vilella*, 2020 WL 6136139, at *3 (E.D. Pa. Oct. 19, 2020) (Baylson, J.); *United States v. Catlett*, 2020 WL 5982266, at *2 (E.D. Pa. Oct. 8, 2020) (McHugh, J.); *United States v. Correa*, 2020 WL 5517466, at *3 (E.D. Pa. Sept. 14, 2020) (Kenney, J.).

This Court has not yet weighed in on this line of cases; a notice of appeal was filed in *United States v. Robinson*, 2021 WL 2633629, but the appeal has not yet been briefed. Case no. 21-2520. *See also United States v. Pollard*, 20 F.4th 1252 (9th Cir. 2021) (concurring opinions of Judges R. Nelson and Forrest disagree as to whether a *Rehaif* claim was earlier available).

### 3.    De Castro did not establish fundamental error.

Most notably, De Castro has not carried his burden to show a fundamental error warranting the exceptional remedy of coram nobis relief. The district court ultimately determined, correctly, that although De Castro "rais[ed] an error of a fundamental kind in that his request for relief is premised upon the Government's alleged failure to prove an essential element of the offense of which he stands convicted," De Castro's claim of error could not withstand plain error review. App. 9, 12. In other words, De Castro failed to show that, had the district court correctly advised him of the knowledge-of-status requirement established by *Rehaif*, there is a reasonable probability that he would not have pled guilty. *Id.* at 12.[4]

As an initial matter, the district court correctly concluded that De Castro could not prevail on plain error review. As set forth in *Greer v.*

---

[4] At the outset, the district court cited the requirement that a second or successive motion seeking habeas corpus relief under 28 U.S.C. § 2255 must assert a new rule of constitutional law made retroactive to cases on collateral review by the Supreme Court, App. 7, and noted this Court's observation in *In re Sampson* that the *Rehaif* decision announced no such rule; in fact, "*Rehaif* did not state a rule of constitutional law at all." 954 F.3d 159, 161 (3d Cir. 2020). Rather, *Rehaif* "addressed what the *statutes* enacted by Congress require for a conviction under 18 U.S.C. §[] 922(g)." *Id.* (emphasis in original). Thus, the district court observed that because De Castro would be ineligible for relief pursuant to the standards governing second or successive habeas motions, he must necessarily be ineligible for coram nobis relief given the clear admonition that the coram nobis

*United States*, 141 S. Ct. 2090 (2021), this standard applies on direct appeal where the defendant did not present the claim before the trial court. The *Greer* Court held that a defendant claiming a *Rehaif* error is entitled to plain error relief only where he "makes a sufficient argument or representation on appeal that he would have presented evidence at trial that he did not in fact know" he was a member of the relevant class of persons prohibited from possessing a weapon. *Id.* at 2100. When a defendant advances such an argument after having entered a guilty plea, he must show that "if the District Court had correctly advised him of the *mens*

---

standard "is more stringent than that applicable on direct appeal or in habeas corpus." App. 8, quoting *Ragbir*, 950 F.3d at 62.

De Castro understandably asserts that *In re Sampson* should not bear on this case because the instant petition is not a second or successive § 2255 motion, Br. 16—a point which the district court acknowledged, App. 8. But it is persuasive, as will be argued above, that he could not achieve relief on a direct appeal either (under the plain error standard) or in a *first* 2255 motion (under the procedural default / actual innocence standard). The bottom line is that De Castro cannot obtain through coram nobis what cannot be achieved at earlier stages of a case. As the First Circuit stated:

> The further a case progresses through the remedial steps available to a criminal defendant, the stiffer the requirements for vacating a final judgment. Thus, direct review is more defendant-friendly than post-judgment review, and an initial habeas petition is easier for a criminal defendant to litigate than a successive one. *The writ of error coram nobis lies at the far end of this continuum.*

*United States v. George*, 676 F.3d 249, 258 (1st Cir. 2012) (emphasis added) (citations omitted).

*rea* element of the offense, there is a 'reasonable probability' that he would not have pled guilty." *Id.* at 2097, citing *United States v. Dominguez-Benitez*, 542 U.S. 74, 83 (2004). Importantly, the *Greer* Court emphasized that "when an appellate court conducts plain-error review of a *Rehaif* instructional error, the court can examine relevant and reliable information from the entire record—including information contained in a pre-sentence report." *Id.* at 2098.

As the district court concluded, the record in the instant case does not support the notion that De Castro would not have entered a plea had he been correctly advised of the *mens rea* element of the offense. In fact—as the district court observed—in his briefing below, De Castro "d[id] not even advance the argument that he would not have entered his guilty plea had he been so advised." App. 12.[5]

Further, there is ample evidence in the record demonstrating that De Castro cannot show a reasonable probability of a different result. De Castro

---

[5] On appeal, De Castro asserts for the first time that he "would not have plead guilty if he knew [entering a guilty plea] required him to admit to being unlawfully in the United States." Br. 18. But, during De Castro's plea colloquy, the district court did advise him that the government was obligated to prove that he was "illegally in the United States and unlawfully in the United States . . . beyond a  reasonable doubt," App. 50-51, and De Castro admitted to being an illegal alien on September 22, 2014, App. 65-66.

admitted at his guilty plea hearing that he was in the country illegally as of the date of his arrest, App. 65-66, and the presentence report relates that he admitted this to the arresting officer on the night of the arrest, PSR ¶ 8 (showing his knowledge at that time of the offense and not just at the time of the plea). The first fact alone is sufficient to defeat relief on plain error review. The Supreme Court presented an explanation in *Greer*, with regard to possession by a prior felon, that is squarely applicable here as well. The Court stated:

> In a felon-in-possession case where the defendant was in fact a felon when he possessed firearms, the defendant faces an uphill climb in trying to satisfy the substantial-rights prong of the plain-error test based on an argument that he did not know he was a felon. The reason is simple: If a person is a felon, he ordinarily knows he is a felon. "Felony status is simply not the kind of thing that one forgets." 963 F.3d 420, 423 (4th Cir. 2020) (Wilkinson, J., concurring in denial of reh'g en banc). That simple truth is not lost upon juries. Thus, absent a reason to conclude otherwise, a jury will usually find that a defendant *knew* he was a felon based on the fact that he *was* a felon. A defendant considering whether to plead guilty would recognize as much and would likely factor that reality into the decision to plead guilty. In short, if a defendant was in fact a felon, it will be difficult for him to carry the burden on plain-error review of showing a "reasonable probability" that, but for the *Rehaif* error, the outcome of the district court proceedings would have been different.

*Greer*, 141 S. Ct. at 2097 (emphasis in original).

The same is true here. Few matters are likely as important to a non-citizen residing in the United States as the legality of his status, and a person who does not have legal permission almost certainly knows that.

De Castro now claims otherwise, but his presentation is entirely unpersuasive.

First, without citing a single piece of evidence, De Castro insists in his brief, and in his coram nobis petition below, that he "legally entered the United States in 2001." Br. 3; App. 82 ¶ 15. But this bare assertion is directly contradicted by the record, which contains overwhelming evidence that De Castro entered the United States illegally.

On September 23, 2014—the day after he was found in possession of the firearm at issue—De Castro was interviewed by Immigration and Customs Enforcement ("ICE") officers. A "Record of Sworn Statement in Administrative Proceedings," in which De Castro's interview statements were contemporaneously documented, reflects that De Castro admitted entering the United States by "cross[ing] into Puerto Rico illegally in 2002 or 2003" without inspection or admission by an Immigration Officer. Supp. App. 8.[6] The Form I-130, Petition for Alien Relative,[7] which De Castro's

---

[6] During his interview with ICE officers, De Castro stated that he had an "approved I-601," Application for Waiver of Grounds of Inadmissibility. Supp. App. 8. Subsequent records checks by ICE officials, however, revealed that De Castro never filed such an application. *Id.* at 4 (Form I-213, Record of Deportable/Inadmissible Alien, dated September 24, 2014).

[7] According to the Instructions for Form I-130, "[a] citizen or lawful permanent resident of the United States may file Form I-130, Petition for Alien Relative, with U.S. Citizenship and Immigration Services (USCIS) to

wife submitted on his behalf on January 22, 2014, also acknowledges that De Castro entered the United States "without inspection." App. 87 ¶ 14. And during his closing argument at De Castro's 2016 trial, De Castro's counsel went even further: "[A]nybody asked him, he'll tell you yeah, I snuck in through Puerto Rico and I came over here and I got married and he did the thing that everybody else wants to do." Supp. App. 24.[8]

While the manner in which De Castro entered the country is not necessarily dispositive of whether he believed he was here legally in September 2014, it is highly probative. *See, e.g.*, *United States v. Balde*, 943 F.3d 73, 97 (2d Cir. 2019) (explaining, in evaluating a *Rehaif* error, that "a defendant who had crossed the border into the United States surreptitiously and without inspection . . . would have no realistic defense that he in good faith believed that he was legally present in the United

---

establish the existence of a relationship to certain alien relatives who wish to immigrate to the United States." U.S. Citizenship & Immigration Servs., OMB No. 1615-0012, Instructions for Form I-130, Petition for Alien Relative (Feb. 13, 2019), *available at* https://www.uscis.gov/sites/default/files/document/forms/i-130instr.pdf.

[8]  De Castro was subsequently granted a new trial based on the fact that his trial counsel was subject to pending disciplinary proceedings for ethics violations during the course of his representation of De Castro. Supp. App. 27 n.1. The district court's order granting De Castro's new trial motion made no specific findings as to the effectiveness of counsel's representation during trial. *Id.*

States"). Moreover, the record contains ample additional evidence that De Castro knew that he did not have legal status as of 2014. During his interview with the United States Probation Office relating to the preparation of his presentence report, De Castro acknowledged that he did "not have status to visit, work, or live in the United States." PSR ¶ 37. He did not object to this paragraph of the presentence report at sentencing. App. 68-69. Even more importantly, De Castro did not object to paragraph 8 of the presentence report, which states that on the date of the charged offense, "*Amin DeCastro told police that he was in the United States illegally* and that he did not have a license to carry a firearm." PSR ¶ 8 (emphasis added); App. 68-69 (confirming no objections to the presentence report during the change of plea and sentencing hearing).

Furthermore, De Castro repeatedly stipulated throughout the district court proceedings that, on September 22, 2014, he was illegally present in the country. First, during his trial, the following stipulation was read into the record: "On September 22, 2014, defendant, Amin De Castro, was an alien, a native and citizen of Dominican Republic, who was unlawfully in the United States." Supp. App. 15.[9] After De Castro was granted a new trial

---

[9]  Additional statements by defense counsel during opening statements and closing arguments further highlight De Castro's knowledge of his illegal status. *See* Supp. App. 13 (explaining, during the opening

for unrelated reasons, he continued to acknowledge that he was illegally

present in the United States. In both his guilty plea agreement and in his

change of plea and sentencing hearing, De Castro again stipulated that he

was an illegal alien as of September 22, 2014. *See* Supp. App. 29 ¶ 1

(explaining that the charges against De Castro arise from his "being in this

country illegally and in possession of" a loaded firearm); App. 65-66

(confirming that De Castro "had a firearm and [was] an illegal alien" on

"the day in question"). Where a defendant "stipulate[s] in his guilty plea

colloquy that he was an illegal alien at the time of the instant offense, it is

strongly suggestive from that admission that he knew of his status as an

illegal alien when he possessed the firearm." *Morales-Ortiz*, 2020 WL

7246913, at *4 (holding that defendant could not establish actual innocence

under the *Rehaif* standard).

 The only evidence that De Castro has invoked in support of his

asserted belief that he was legally present in the United States on

September 22, 2014, is a June 10, 2014 notice addressed to his wife, stating

that the Form I-130, Petition for Alien Relative, that she had submitted on

---

statement, that De Castro "has been in America many years, albeit, illegal,
had three kids in America, all American children, and has the second
wife"); *id*. at 24 ("We cannot say that [the defendant]'s not an illegal alien.
He is. He admitted it."); *id*. at 25 (acknowledging during his closing
argument, that "[defendant] knew he was an illegal alien").

his behalf had been approved, and a second notification dated July 23, 2014, informing De Castro that his immigrant visa application was eligible for further processing. App. 90, 92. De Castro contends that these documents led him to "legitimately believe that he was not unlawfully in the country but was allowed to remain in the United States while a determination was made of his immigration status." Br. 18.

That is unconvincing. As explained above, the I-130 is employed by a resident spouse to gain permission for his or her spouse to enter the United States and seek permanent residency. It does not itself afford permission to enter or remain in the United States. Rather, the one-page I-130 approval notice expressly provides:

> The approval of this visa petition does not in itself grant any immigration status and does not guarantee that the alien beneficiary will subsequently be found to be eligible for a visa, for admission to the United States, or for an extension, change, or adjustment of status. THIS FORM IS NOT A VISA NOR MAY IT BE USED IN PLACE OF A VISA.

App. 90 (capitalization in original). And the one-page July 23, 2014 notice informs De Castro only that his "immigrant visa petition is now eligible for further processing," and makes clear that there are further "steps in the immigration process." *Id.* at 92. These two notices—viewed in light of the entire record—do not come close to establishing that De Castro believed he was legally present in the United States on the date he was found in

possession of a firearm. *Cf. Balde*, 943 F. 3d at 97 (concluding, on direct appeal, that defendant may not have known of his illegal status where he "vigorously argued" throughout the district court proceedings that he was lawfully present in the U.S., preserved that issue for appellate review in his plea agreement, and maintained during his plea colloquy that he thought he had been paroled into the country at the time of his firearm offense).

For all of these reasons, consistent with the decision in *Greer*, the district court correctly held that De Castro could not gain relief on plain error review, and thus certainly could not obtain the more exceptional remedy of coram nobis relief.

Finally, we observe that the applicable standard should in fact be even more stringent, given the nature of coram nobis, and at least equate to the cause and prejudice standard that applies on habeas review to a defaulted claim. *See United States v. Frady*, 456 U.S. 152, 164 (1982) (explaining that the "plain error" standard, which was "intended for use on direct appeal," is "out of place when a prisoner launches a collateral attack against a criminal conviction after society's legitimate interest in the finality of the judgment has been perfected by the expiration of the time allowed for direct review or by the affirmance of the conviction on appeal").

As a "general rule," claims not raised at trial or on direct appeal "may not be raised on collateral review." *Massaro* v. *United States*, 538 U.S. 500, 504 (2003). To overcome the procedural default rule, a defendant must show both "cause" for the default and "actual prejudice." *Bousley*, 523 U.S. at 622. As explained earlier, cause is not established here based on the futility of the claim. By the same token, ineffective assistance of counsel cannot provide cause for the default, as "counsel [is] not required to make meritless objections under then-existing precedent, anticipate changes in the law, or raise every potentially meritorious claim." *United States* v. *Garza*, 340 F. App'x 243, 244-45 (5th Cir. 2009) (unpublished; per curiam); *see also Smith* v. *Murray*, 477 U.S. 527, 536 (1986); *United States* v. *Doe*, 810 F.3d 132, 154 (3d Cir. 2015).

That leaves one route: a defendant may show cause for procedural default if he makes a threshold showing of "actual innocence." *Smith*, 477 U.S. at 537. The "actual innocence" exception requires the defendant to show that it was "more likely than not that no reasonable juror would have convicted him" had the district court correctly instructed the jury (or correctly advised the defendant at a plea) and given the government the opportunity to adduce evidence of the omitted element. *Schlup* v. *Delo*, 513 U.S. 298, 327-28 (1995). The *Bousley* Court stated:

It is important to note in this regard that "actual innocence" means factual innocence, not mere legal insufficiency. *See Sawyer v. Whitley*, 505 U.S. 333, 339 (1992). In other words, the Government is not limited to the existing record to rebut any showing that petitioner might make. Rather, on remand, the Government should be permitted to present any admissible evidence of petitioner's guilt even if that evidence was not presented during petitioner's plea colloquy and would not normally have been offered before our decision in *Bailey* [reinterpreting § 924(c)].

*Bousley,* 523 U.S. at 623-24.

For all the reasons stated above, De Castro can neither show actual innocence—to establish cause for the default—or prejudice. He admitted at the time of his arrest that he was in the country illegally, he admitted to immigration officers the next day that he had entered without inspection, he admitted during his guilty plea hearing that he was in fact in the country illegally at the time of the arrest, and the only documents he presents now to show otherwise on their face make clear that by themselves they afford no lawful basis for presence in the United States. In these circumstances, De Castro cannot show that, presented with this evidence, no reasonable juror would convict him of the offense as defined by *Rehaif*, nor that he suffered prejudice through the court's acceptance of his guilty plea.

For all of these reasons, De Castro is not entitled to the rare and extraordinary relief that the writ of coram nobis represents.

# CONCLUSION

For the reasons stated above, the government respectfully requests that the district court's order denying the petition for a writ of error coram nobis be affirmed.

Respectfully submitted,

JENNIFER ARBITTIER WILLIAMS
United States Attorney


*/s Robert A. Zauzmer*
ROBERT A. ZAUZMER
Assistant United States Attorney
Chief of Appeals
Pa. Bar No. 58126


*/s Jessica Rice*
JESSICA RICE
Assistant United States Attorney
NY Bar No. 5385091

United States Attorney's Office
615 Chestnut Street, Suite 1250
Philadelphia, PA  19106
(215) 861-8527

## CERTIFICATION

I hereby certify that the electronic version of this brief filed with the Court was automatically scanned by OfficeScan Real-Time Scan Monitor, version 10.5, by Trend Micro, and found to contain no known viruses. I further certify that the text in the electronic copy of the brief is identical to the text in the paper copies of the brief filed with the Court.

/s Jessica Rice
JESSICA RICE
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that this brief has been served on the Filing User

identified below through the Electronic Case Filing (ECF) system:

Kenneth L. Mirsky, Esq.
2033 Walnut Street
Philadelphia, PA  19103
klmirsky@comcast.net

*/s Jessica Rice*
JESSICA RICE
Assistant United States Attorney

DATED:  January 18, 2022.